IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LAKESHIA PASSMORE and            *
CHRIS PASSMORE,
                                 *
       Plaintiffs,
                                 *
vs.                                    CASE NO. 4:10-CV-115 (CDL)
                                 *
PUBLIX SUPER MARKETS, INC.,
                                 *
       Defendant.
_____    *

O R D E R

Plaintiffs Lakeshia Passmore ("Mrs. Passmore") and Chris
Passmore ("Mr. Passmore") (collectively "Plaintiffs") allege
that Defendant Publix Super Markets, Inc. ("Defendant" or
"Publix") negligently maintained its premises, causing Mrs.
Passmore to slip and fall and sustain serious injuries.
Presently pending before the Court is Defendant's Motion for
Summary Judgment (ECF No. 11) and Defendant's Motion to Deem
Request for Admissions Nos. 1, 2, 3 & 5 Admitted (ECF No. 19).
For the following reasons, Defendant's Motion for Summary
Judgment is granted.  Defendant's Motion to Deem Request for
Admissions Nos. 1, 2, 3 & 5 Admitted is moot.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the facts are as follows.

Plaintiffs visited Defendant's store on July 13, 2009 to wire money to Mr. Passmore's aunt.  L. Passmore Dep. 45:8-9, ECF No. 12-1; C. Passmore Dep. 16:15-18, ECF No. 12-2.  When they entered the store, Plaintiffs went directly to the customer service area in the front of the store to make the transfer.  L. Passmore Dep. 49:24-50:3; C. Passmore Dep. 19:7-9.  Mrs. Passmore noticed that the store was crowded.  L. Passmore Dep. 50:4-6.  It took Plaintiffs approximately ten to fifteen minutes to complete their transaction.  *Id.* at 53:4-7, 19-21.

After concluding the transfer, Plaintiffs turned to walk out of the store; as they left, the customer service desk was on their left and the cash registers were on their right.  *Id.* at

59:19-60:4. Plaintiffs began walking toward the exit doors opposite from the doors that they entered. *Id.* at 55:1-6. As they walked toward the exit, Mr. Passmore walked about a yard in front of Mrs. Passmore and a few steps to her right. *Id.* at 55:19-56:15; C. Passmore Dep. 21:22-22:14. Several steps beyond the service desk, Mrs. Passmore slipped and fell. L. Passmore Dep. 59:4-12. Mrs. Passmore did not see what caused her to fall either before or after she fell. *Id.* at 62:18-63:12. Mr. Passmore saw water on the floor after Mrs. Passmore's fall but did not see any substance on the floor prior to her fall. C. Passmore Dep. 24:13-18, 27:25-28:2, 42:3-9. According to Mr. Passmore, the puddle of water was approximately four inches in diameter but larger than the size of a hamburger patty. *Id.* at 26:6-13, 28:9-16. Mr. Passmore did not see the water before the fall because the floor was white and "you can barely see water on a white surface." *Id.* at 26:19-23; *see also id.* 28:4-7.

At the time of Mrs. Passmore's fall, a Publix employee was bagging groceries at a checkout line in Mrs. Passmore's vicinity. *See generally* Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. I, Video Recording, July 13, 2009, ECF No. 22 [hereinafter Video Recording]. After her fall, the employee walked over to the area where Mrs. Passmore fell and pointed to something on the floor. *Id.* at Ex. E part 1, Digital Images, ECF No. 20-15 at 66-71. Two managers, Christy Gomez ("Ms. Gomez") and Tamela

Thomas ("Ms. Thomas"), came to assist Mrs. Passmore after the fall. L. Passmore Dep. 69:3-15. According to Mr. Passmore, the managers saw the water on the floor. C. Passmore Dep. 26:11-17, 33:21-23. Mr. Passmore also asserts that one of the managers told him that the water came from the ice machine and that the ice machine leaks at times. *Id.* at 32:3-19.

Ms. Gomez is an assistant store manager and has the duty to ensure that the store is clean and free from hazards, and she continually examines the floor as she works to look for hazardous conditions. Gomez Decl. ¶ 4, ECF No. 13-2. Ms. Thomas is a customer service area manager and her duties include patrolling the front of the store for hazards. Thomas Aff. ¶ 4, ECF No. 13-1. Publix has a policy that requires employees to pick up any debris or clean up any hazard they observe, or if an employee cannot clean up a hazard themselves, the employee is required to stand by the hazard and direct customers away from it while another employee retrieves supplies to clean the hazard. Gomez Decl. ¶ 8; Thomas Aff. ¶ 9.

Ms. Gomez and Ms. Thomas were in the employee break room just prior to Mrs. Passmore's fall. Gomez Decl. ¶ 13; Thomas Aff. ¶ 14. To get to the break room, Ms. Gomez walked from the customer service area, past the ice machine on her left, and past the exit doors on the left. Gomez Decl. ¶ 10. Ms. Thomas walked from the manager's office through the customer service

4

area, past the ice machine on her left, and past the exit doors on the left to get to the break room. Thomas Aff. ¶ 11. As Ms. Gomez and Ms. Thomas walked to the break room they looked for hazards on the floor, but neither Ms. Gomez nor Ms. Thomas saw any debris or water on the floor. Gomez Decl. ¶ 11; Thomas Aff. ¶ 12. Ms. Gomez and Ms. Thomas were in the break room for less than five minutes before exiting and learning that Mrs. Passmore had fallen. Gomez Decl. ¶ 12; Thomas Aff. ¶ 13. According to Ms. Gomez and Ms. Thomas, Mrs. Passmore fell in an area that they passed on the way to the break room. Gomez Decl. ¶ 13; Thomas Aff. ¶ 16.

Plaintiffs claim that the managers did not walk from the customer service area while they were at the customer service desk. Pl.'s Resp. to Def.'s Mot. for Summ. J. Attach. 5, L. Passmore Decl. ¶ 8, ECF No. 20-5; *Id.* at Attach. 4, C. Passmore Decl. ¶ 7, ECF No. 20-4. If the managers had been in the customer service area, Plaintiffs contend they would have seen them. L. Passmore Decl. ¶ 11; C. Passmore Decl. ¶ 10. Mr. Passmore noticed a manager walk across his path just before Mrs. Passmore fell. C. Passmore Dep. 24:21-25:24.

## DISCUSSION

In this diversity action, the Court must apply Georgia law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938). In Georgia, landowners owe a duty to their invitees to exercise

reasonable care to keep their premises safe.  O.C.G.A. § 51-3-1.
To prevail on their negligence claim, Plaintiffs must
demonstrate "(1) that the defendant had actual or constructive
knowledge of the hazard; and (2) that the plaintiff lacked
knowledge of the hazard despite the exercise of ordinary care
due to actions or conditions within the control of the
owner/occupier." *Robinson v. Kroger Co.*, 268 Ga. 735, 748, 493
S.E.2d 403, 414 (1997).  "Additionally, causation is always an
essential element in slip or trip and fall cases." *Pinckney v.
Convington Athletic Club & Fitness Ctr.*, 288 Ga. App. 891, 893,
655 S.E.2d 650, 653 (2007) (internal quotation marks omitted).

## I.   Defendant's Knowledge of the Hazard

Defendant argues that it is entitled to summary judgment
because it did not have actual or constructive knowledge of the
water on the floor.  Plaintiffs do not contend that Defendant
had actual knowledge of the hazard.  Thus, the Court must
determine whether there is a genuine dispute of material fact as
to whether Defendant had constructive knowledge of the water.
Plaintiffs can prove that Defendant had constructive knowledge
by showing either that "an employee was positioned in the
immediate vicinity and had the opportunity and means to discover
and remove the hazard," or "the alleged hazard was present for
such a length of time that it would have been discovered had the
proprietor exercised reasonable care in inspecting the

premises." *Blocker v. Wal-Mart Stores, Inc.*, 287 Ga. App. 588, 590, 651 S.E.2d 845, 847 (2007) (quoting *Washington v. J.D. Royer Wholesale Florist*, 275 Ga. App. 407, 408, 620 S.E.2d 626, 628 (2005)). Plaintiffs argue that a genuine fact dispute exists for both methods of proving constructive knowledge. The Court will address each argument in turn.

A.  Employee Positioned in the Immediate Vicinity with Opportunity and Means to Discover and Remove the Hazard

Plaintiffs argue that a Publix employee working near the area where Mrs. Passmore slipped and fell could have easily seen and removed the water. The evidence demonstrates that there was a Publix employee bagging groceries near where Mrs. Passmore fell. *See* Video Recording. "However, [e]vidence that an employee was present in the area of the hazard is not sufficient, standing alone, to raise a jury question as to the proprietor's constructive knowledge of the hazard." *Id.* (alteration in original) (quoting *Kroger Co. v Williams*, 274 Ga. App. 177, 178, 617 S.E.2d 160, 162 (2005)). Instead, "to prevent summary judgment, *it must be shown that the employee was in a position to have easily seen the substance and removed it.*" *Id.* (internal quotation marks omitted). Mrs. Passmore did not see the water on the floor before or after her fall. L. Passmore Dep. 62:18-63:12. Mr. Passmore saw water on the floor after Mrs. Passmore's fall but did not see any substance on the

floor prior to her fall.  C. Passmore Dep. 24:13-18, 27:25-28:2, 42:3-9.  According to Mr. Passmore, he did not see the water before the fall because the floor was a white and "you can barely see water on a white surface."  *Id.* at 26:19-23; *see also id.* 28:4-7.  That Mr. Passmore saw the water after Mrs. Passmore's fall "fails to address the pertinent inquiry as to whether the [water] spot was easily visible *before* the fall." *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 250, 699 S.E.2d 439, 442-43 (2010).  The cases cited by Plaintiffs are distinguishable because they do not involve an admission by the plaintiff that the hazard was difficult to see.  *See Somers v. M.A.U., Inc.*, 289 Ga. App. 731, 734, 658 S.E.2d 242, 244 (2008) (acknowledging that cases where plaintiff admitted that foreign substance was not visible were distinguishable); *see also McConnell v. Smith & Woods Mgmt. Corp.*, 233 Ga. App. 447, 448, 504 S.E.2d 526, 527-28 (1998) (same); *Straughter v. J.H. Harvey Co.*, 232 Ga. App. 29, 29-30, 500 S.E.2d 353, 354-55 (1998) (finding jury question on constructive knowledge where evidence suggested that a store employee could have easily seen green item on which the plaintiff slipped had he looked).  "In light of [Mr. Passmore's] admission that the [water] spot on the floor was not easily visible to him prior to the fall, [Plaintiffs] ha[ve] not established that [Defendant's] employee[] could have easily seen and removed it."  *Brown,* 305 Ga. App. at 251, 699

S.E.2d at 443; *accord Matthews v. The Varsity, Inc.*, 248 Ga. App. 512, 513, 546 S.E.2d 878, 880 (2001).

Mr. Passmore's affidavit containing the conclusory allegation that the employee could have easily seen and removed the water—contrary to his deposition testimony that the water was not easily visible—is not sufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) ("[Plaintiff's] conclusory assertions to the contrary, in the absence of supporting evidence, are insufficient to withstand summary judgment."). Mrs. Passmore's affidavit stating that the employee was in a position to easily remove the water does not create a question of fact as to whether he could have easily seen the water in order to remove it. *See* L. Passmore Decl. ¶ 18. Based on the foregoing, the Court finds that Plaintiffs have failed to create a genuine dispute of material fact as to whether Defendant's employee could have easily seen the water and removed it prior to Mrs. Passmore's fall. Accordingly, Plaintiffs have likewise failed to create a genuine dispute of material fact as to whether Defendant had constructive knowledge of the hazard under this theory.

B.   Reasonable Inspection of the Premises

Plaintiffs also contend that Defendant had constructive knowledge of the hazard because it lacked a reasonable

9

inspection procedure and a question of fact exists as to whether Ms. Gomez and Ms. Thomas actually conducted an inspection within five minutes of Mrs. Passmore's fall.   "Regardless of the adequacy of any inspection program, when an owner shows that an inspection occurred within a brief period of time prior to an invitee's fall, the inspection procedure was adequate as a matter of law and defeats an invitee's negligence action." *Mucyo v. Publix Super Markets, Inc.*, 301 Ga. App. 599, 601, 688 S.E.2d 372, 375 (2009); *see also Matthews*, 248 Ga. App. at 513, 546 S.E.2d at 881 (holding that summary judgment was appropriate where inspection occurred five minutes before the fall and no hazard was found because defendant "presented evidence that the area in which [plaintiff] slipped was free of debris only five minutes earlier.   As such, [plaintiff's] enumeration attacking [defendant's] inspection procedures lack[ed] merit.").

Defendant presented evidence that both Ms. Gomez and Ms. Thomas inspected the area where Mrs. Passmore fell approximately five minutes before the fall and the area was free of hazards. Gomez Decl. ¶¶ 11-13; Thomas Aff. ¶¶ 12-13, 16.   Both managers stated that the path they took to the break room began at or near the customer service desk.   Gomez Decl. ¶ 10; Thomas Aff. ¶ 11.   Plaintiffs claim that the managers did not walk in or away from the customer service area during the ten or fifteen minutes they were conducting their transaction.   L. Passmore Decl. ¶ 8;

C. Passmore Decl. ¶ 7.  Plaintiffs assert that if the managers had been in the customer service area they would have remembered seeing them.  L. Passmore Decl. ¶ 11; C. Passmore Decl. ¶ 10. While Plaintiffs' declarations contradict the exact starting point of Ms. Gomez and Ms. Thomas's path to the break room, the affidavits do not contradict the managers' statements that they inspected the area where Mrs. Passmore fell.  *See* L. Passmore Dep. 59:4-12 (stating she slipped beyond the customer service desk); Gomez Decl. ¶¶ 11, 13 (stating she passed area where Mrs. Passmore fell); Thomas Aff. ¶¶ 12, 16 (stating she inspected area where Mrs. Passmore fell); *see also Mucyo*, 301 Ga. App. at 601, 688 S.E.2d at 375 (rejecting plaintiff's claim that because she did not see the employee prior to her fall a fact dispute existed regarding whether an inspection occurred "because it is possible that the employee inspected the floor without being noticed by [plaintiff]."). Mrs. Passmore admits that she did not pay attention to what was going on at the front of the store while she was conducting the transfer.  *See* L. Passmore Dep. 52:12-53:3 (stating that while she was at the customer service counter "I was conducting my business, so my attention was to me doing my business."). Therefore, the evidence offered by Plaintiffs does not contradict the managers' statements that they in fact conducted an inspection approximately five minutes before Mrs. Passmore's fall and the area was free of hazards.

Plaintiffs argue that this Court's decision in *Kent v. Callaway Gardens Resort, Inc.*, No. 4:09-CV-70 (CDL), 2010 WL 2528321 (M.D. Ga. 2010), is applicable here. The Court disagrees. In *Kent*, the Court held that "[e]vidence of [d]efendant's practice of having employees walk through the [premises] to check the readiness of the facility for the guests and to ensure cleanliness, not safety, is not sufficient to establish a reasonable inspection procedure as a matter of law." *Id.* at *3. The defendant in *Kent* also failed to produce any evidence that its inspection procedure was actually carried out at the time of the plaintiff's fall. *Id.* In contrast, the evidence here demonstrates Defendant's employees actually carried out an inspection—for the purpose of looking for hazards, not cleanliness—shortly before Mrs. Passmore's fall. Thus, the Court's reasoning in *Kent* does not alter the Court's conclusion here that Defendant's inspection was adequate as a matter of law.

## II.  Alleged Admission of Liability By Defendant's Employee

Finally, Plaintiffs argue that a Publix representative, Joanne Cole ("Ms. Cole")—a liability claims analyst—told them that Defendant was 100% liable for Mrs. Passmore's injuries resulting from her fall. L. Passmore Dep. 74:15-75:6; C. Passmore Dep. 37:24-38:5. Plaintiffs contend that Ms. Cole's statement is an admission by a party opponent and creates a

question of fact as to Defendant's liability.  Ms. Cole refutes
Plaintiffs' allegation that she made any statement that Publix
was 100% at fault.  Def.'s Reply Ex. A, Cole Decl. ¶ 10, ECF No.
25-1.

Assuming without deciding that the statement is an
admission of a party opponent and thus not hearsay, the Court
finds that Ms. Cole's statement is inadmissible lay witness
testimony.  Federal Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the
> witness' testimony in the form of opinions or
> inferences is limited to those opinions or inferences
> which are (a) rationally based on the perception of
> the witness, (b) helpful to a clear understanding of
> the witness' testimony or the determination of a fact
> in issue, and (c) not based on scientific, technical,
> or other specialized knowledge within the scope of
> Rule 702.

Fed. R. Evid. 701.  First, Plaintiffs failed to point the Court
to sufficient evidence in the record from which the Court could
conclude that Ms. Cole's testimony is rationally based on her
perception.  It is undisputed that Ms. Cole did not perceive or
see any of the events giving rise to this action.  Although Ms.
Cole was a claims examiner, the record does not reveal the
extent of her investigation, what specific facts she uncovered,
and the basis for any conclusion as to Defendant's liability.
In fact, nothing exists in the present record to suggest that
Ms. Cole was privy to any information that was not provided by
the Plaintiffs or the two managers who testified that they

passed by the area of the fall minutes before it occurred. Therefore, any conclusion by Ms. Cole as to liability would not be based upon her perception of any of the events giving rise to the fall but instead would be based upon her lay interpretation of the facts she learned during her investigation. The Court finds that such "Monday morning quarterback" testimony is not rationally based on Ms. Cole's perception as contemplated by Rule 701(a).

Even if Ms. Cole's testimony were rationally based on her perception, it is not helpful to the determination of a fact in issue. It simply takes the facts testified to by the witnesses and provides a personal opinion as to who she believes to be at fault. Although Rule 704(a) provides that an opinion "embrac[ing] an ultimate issue to be decided by the trier of fact" is admissible, Fed. R. Evid. 704(a), Rule 701's requirement that the opinion be helpful to the trier of fact prohibits the "admission of opinions which would merely tell the jury what result to reach," Fed. R. Evid. 704 advisory committee's note; *see also* Fed. R. Evid. 701 advisory committee's note (noting that if "attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack helpfulness is called for by the rule."); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness. . . may not testify to the

legal implications of conduct; the court must be the jury's only source of law."). Therefore, the Court finds that Ms. Cole's testimony is inadmissible because it fails to satisfy Rule 701(b)'s requirement that the testimony must be helpful to the determination of a disputed factual issue.

Finally, to the extent that Ms. Cole has special training as a claims analyst that qualifies her to conduct an accident reconstruction, the Court finds that any testimony by her as to who was at fault constitutes a legal conclusion requiring "scientific, technical, or otherwise specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Since Rule 701(c) prevents its admissibility as lay testimony and since Plaintiffs failed to identify Ms. Cole as an expert under Rule 702, her alleged opinion testimony is not admissible.

The Court acknowledges that a business owner or officer may testify based on "particularized knowledge garnered from years of experience within the field" without being disclosed as an expert. *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003). Ms. Cole's alleged statement, however, goes beyond an opinion based on her personal experiences as an employee of Publix and her knowledge of its policies and how they relate to the specific incident at issue. Her alleged statement is a conclusion as to the ultimate issue that could only be reached if it were established that she had

some special expertise in the area of accident reconstruction
that qualified her to analyze facts and provide an opinion as to
relative fault.   Such opinion testimony can only be admitted
under Rule 702 (which Plaintiffs do not even attempt to do) and
not through the back door of Rule 701.   *See Ojeda v. Louisville
Ladder Inc.,* 410 F. App'x 213, 215 (11th Cir. 2010) (per curiam)
(finding that plaintiff could not create question of fact on
summary judgment by offering legal conclusion because his
opinion was inadmissible as improper lay witness testimony under
Rule 701(c)).

Plaintiffs have not demonstrated that the alleged
statements of Ms. Cole can be reduced to admissible form at
trial and thus they cannot be considered by this Court on
summary judgment.   *See Rowell v. BellSouth Corp.*, 433 F.3d 794,
800 (11th Cir. 2005) ("On motions for summary judgment, we may
consider only evidence which can be reduced to an admissible
form.").   Accordingly, as previously explained, Defendant is
entitled to summary judgment.

## III. Plaintiffs' Claim for Attorney's Fees

Plaintiffs argue that they should be awarded attorney's
fees under O.C.G.A. § 13-6-11, which provides that "where the
defendant has acted in bad faith, has been stubbornly litigious,
or has caused the plaintiff unnecessary trouble and expense, the
jury may allow [expenses of litigation]."   O.C.G.A. § 13-6-11.

Obviously, Plaintiffs are not entitled to recover their attorney's fees given the Court's Order granting summary judgment to Defendant.

CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (ECF No. 11) is granted. Defendant's Motion to Deem Requests for Admissions Nos. 1, 2, 3 & 5 Admitted (ECF No. 19) is moot.


IT IS SO ORDERED, this 24th day of August, 2011.

S/Clay D. Land
                    CLAY D. LAND
            UNITED STATES DISTRICT JUDGE